IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| SHAKEIL L. MCCANTS, o/b/o ) | |
| B.A.T., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.  3:08cv408-CSC |
| ) | (WO) |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

The plaintiff, Shakeil L. McCants, filed this lawsuit on behalf of her minor child, B.A.T., challenging a final judgment by Defendant Michael J. Astrue, Commissioner of Social Security, in which he determined that B.A.T. is not "disabled" and, therefore, not entitled to child supplemental security income benefits.  In 2004, the plaintiff filed on behalf of B.A.T. an application for supplemental security income benefits.  The plaintiff's application was denied at the initial administrative level.  The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  A hearing was conducted on October 31, 2006, and a supplemental hearing was conducted on March 13, 2007.  Following the supplemental hearing, the ALJ determined that B.A.T. was not disabled. The Appeals Council rejected a subsequent request for review.  The ALJ's decision consequently

became the final decision of the Commissioner of Social Security (Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The parties have consented to the undersigned United States Magistrate Judge rendering a final judgment in this lawsuit.  The court has jurisdiction over this lawsuit under 42 U.S.C. §§ 405(g) and 1383(c)(3).[2]  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be reversed and this case remanded to the Commissioner for further proceedings.

## I.  STANDARD OF REVIEW

In 1996, the President signed into law the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, which included a new standard for defining child disability under the Social Security Act.  *See* Pub. L. No. 104-193, 110 Stat. 2105, 2188 (1996).  The revised statute provides that an individual under 18 shall be considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(I) (1999).  The sequential analysis for determining whether a child claimant is disabled is as follows:

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[2] Title 42 U.S.C. §§ 405(g) and 1383(c)(3) allow a plaintiff to appeal a final decision of the Commissioner to the district court in the district in which the plaintiff resides.

1.  If the claimant is engaged in substantial gainful activity, he is not disabled.

2.  If the claimant is not engaged in substantial gainful activity, the Commissioner determines whether the claimant has a physical or mental impairment which, whether individually or in combination with one or more other impairments, is a severe impairment. If the claimant's impairment is not severe, he is not disabled.

3.  If the impairment is severe, the Commissioner determines whether the impairment meets the durational requirement and meets, medically equals, or functionally equals in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies this requirement, the claimant is presumed disabled.

*See* 20 C.F.R. § 416.924(a)-(d) (1997).

The Commissioner's regulations provide that if a child's impairment or impairments are not medically equal, or functionally equivalent in severity to a listed impairment, the child is not disabled. *See* 20 C.F.R. § 416.924(d)(2) (1997). In reviewing the Commissioner's decision, the court asks only whether her findings concerning the steps are supported by substantial evidence. *See Brown v. Callahan*, 120 F.3d 1133 (10th Cir. 1997).

## II.  ADMINISTRATIVE PROCEEDINGS

B.A.T. was 3 years old at the time of the October 31, 2006, hearing before the ALJ. (R. 300.) The plaintiff alleges that, on the day her child was born, July 16, 2003, B.A.T. became disabled due to closed ear canals and an inability to hear. (R. 58.) Following the administrative hearing, the ALJ found that B.A.T. has severe impairments of bilateral ear canal stenosis status-post August 27, 2004 bilateral canaloplasty and tympanoplasty; February 17, 2005 left canaloplasty; April 14, 2005, right canaloplasty; September 8, 2005,

right canaloplasty; January 12, 2006, left canaloplasty; and August 3, 2006, tympanoplasty.[3] The ALJ concluded that B.A.T.'s impairments, when considered singularly or in combination, did not meet or medically equal in severity the criteria for any impairment listed at 20 CFR, part 404, Subpart P, Appendix 1. (R. 21.) Accordingly, the ALJ determined that B.A.T. was not disabled. (R. 29.)

### III. The Issues

The plaintiff raises the following issues:

(1) The Commissioner's decision should be reversed, because the ALJ erred by failing to find that B.A.T.'s well-documented bilateral hearing impairments met or medically equaled Listing 102.08A.

(2) The Commissioner's decision should be reversed, because the ALJ erred by failing to call upon the expertise of a medical expert.

(Doc. No. 12.)

### III. DISCUSSION

The plaintiff raises several issues and arguments related to this court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence. *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987). However, the court pretermits discussion of the plaintiff's specific arguments because the

---

[3] Although not discussed by the ALJ, the medical records also indicate that B.A.T. underwent a bilateral canaplasty and tympanoplasty on September 13, 2004 (R. 154), a right ear canaloplasty on July 1, 2005 (R. 148), and a right ear canaloplasty on August 3, 2006 (R. 248). Thus, doctors performed surgery to treat B.A.T.'s hearing problem on at least eight occasions between her birth date on July 16, 2003, and her most recent surgical procedure on August 3, 2006. The court also notes that B.A.T. was placed under anesthesia on three occasions in an effort to view her ear canals. (R. 95-97, 101, & 105.)

court concludes that the Commissioner erred as a matter of law, and thus, this case is due to be remanded for further proceedings. Specifically, the court finds that the Commissioner incorrectly assessed whether B.A.T. meets Listing § 102.08(A).

A young child's hearing impairment meets the Listing when the following criteria are met:

> For children below 5 years of age at time of adjudication, inability to hear air conduction thresholds at an average of 40 decibels (db) hearing level or greater in the better ear. . . .

§ 102.08(A).

When assessing whether a child's hearing impairment meets the Listing, the ALJ must consider the following:

> The criteria for hearing impairments in children take into account that a lesser impairment in hearing which occurs at an early age may result in a severe speech and language disorder.
>
> Improvement by a hearing aid, as predicted by the testing procedure, must be demonstrated to be feasible in that child, since younger children may be unable to use a hearing aid effectively.
>
> The type of audiometric testing performed must be described and a copy of the results must be included. The pure tone air conduction hearing levels in 102.08 are based on American National Standard Institute Specifications for Audiometers, S3.6-1969 (ANSI-1969). The report should indicate the specifications used to calibrate the audiometer.
>
> The finding of a severe impairment will be based on the average hearing levels at 500, 1000, 2000, and 3000 Hertz (Hz) in the better ear, and on speech discrimination, as specified in § 102.08.

Listing § 102.00(B).

When deciding whether B.A.T.'s hearing impairments meet or medically equal Listing § 102.08(A), the ALJ relied on two audiological assessments. Specifically, the ALJ determined as follows:

> The claimant's representative alleges an October 10, 2006 audiological assessment satisfies the listing criteria (Ex. 14F), but the undersigned is not persuaded. The assessment utilizes hand-drawn Xs, Os, and lines to indicate the claimant's hearing level in decibels. While the assessment clearly reflects the claimant could not hear below 40 decibels with the better ear at 500 and 2000 Hertz (Hz) and 45 decibels at 1000 Hz, the assessment establishes that the claimant could hear at 32-33 decibels at 3000 Hz.
>
> Another audiological assessment, administered on February 16, 2006, reflects significantly better hearing. With the claimant's better ear, she could hear 25 decibels at 500 Hz, 30 decibels at 1000 Hz, and 15 decibels at 2000 and 3000 Hz (Ex. 11F).
>
> The listing requires the undersigned to assess the claimant's *average* hearing levels, and, considering both audiological assessments, the evidence does not establish that an inability to hear air conduction thresholds at an average of 40 decibels or greater in the better ear.
>
> The claimant objects to consideration of the February 16, 2006 audiological assessment, arguing the test failed to indicate reliability (Ex. 9E). Again, the undersigned is not persuaded. A plain reading of the full report reflects the examiners accepted the results as valid and reliable. The examiners stated: "[The claimant] is experiencing a mild conductive hearing loss in at least one ear. Speech detection thresholds support the puretone findings and indicate a mild hearing loss for speech bilaterally. [The claimant] was very responsive to conditioning *and generated very reliable responses*" (Ex. 11F) (emphasis added).

> The undersigned also rejects the claimant's representative's argument that the latter audiological assessment should receive greater weight because it occurred closer in time to the formal hearing. The claimant's representative's argument is based upon a misreading of the applicable listing. While the listing criteria mentions the time of adjudication, it does so only to establish that the claimant's age at the time of adjudication dictates which subsection of the listing is applicable. The listing language does not announce a preference for signs or findings closer in time to the date of adjudication.

(R. 21.)

The court, however, is unable to determine whether the ALJ's determination that B.A.T.'s hearing impairment does not meet the Listing based on audiological reports is supported by substantial evidence. When determining that B.A.T.'s hearing impairments do not meet the Listing, the ALJ substituted his judgment for that of a medical specialist. This he cannot do. *See Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982). Although the ALJ found that, at 3000 Hz, B.A.T. could hear at 15 decibels during the February 16, 2006 test and 32-33 during the October 10, 2006 test, the audiological tests do not indicate that B.A.T.'s hearing in her better ear was tested at 3000 Hz as required by § 102.00(B). Instead, it appears that the ALJ calculated B.A.T.'s test scores at 3000 Hz by averaging B.A.T.'s test scores at 2000 Hz and 4000 Hz. Because the audiological results are indicated with hand-drawn Xs, Os, and lines on a graph, the court is unable to discern whether the ALJ's findings with respect to any of the hearing frequencies are accurate. A medical specialist would be better able to interpret the audiological results. The ALJ, however, chose to interpret the medical results on his own. An administrative law judge has a duty to develop a full and fair

record. *Kelley v. Heckler*, 761 F.2d 1538 (11th Cir. 1985). When there is a conflict, inconsistency, or ambiguity in the record, the ALJ has an obligation to resolve the conflict, giving specific reasons supported by the evidence as to why he accepted or rejected a finding. The ALJ, however, did not resolve the ambiguities concerning the interpretation of the audiological results in his analysis. In the absence of an explanation of how the ALJ interpreted the audiological tests, the court cannot conduct a meaningful review. *See e.g., Ryan v. Heckler*, 762 F.2d 939 (11th Cir. 1985). Thus, the court cannot conclude that the ALJ's determination that the audiological results demonstrate that B.A.T.'s hearing impairments do not meet the Listing is supported by substantial evidence.[4]

## IV. Conclusion

Accordingly, this case will be reversed and remanded to the Commissioner for further proceedings consistent with this opinion.

---

[4] On remand, the Commissioner should also consider the effect B.A.T.'s hearing impairment has on her ability to acquire and use information and communicate with others and whether her speech condition meets or equals a Listing. The medical records are replete with evidence concerning B.A.T.'s speech problem. For example, during an examination on June 2, 2004, at the Charity League Hearing and Speech Center for Children, B.A.T. localized to both speakers and gave "false positive responses." (R. 156.) Although B.A.T.'s parents reported to Auburn University Department of Communication Disorders on February 15, 2006, that B.A.T. would respond to her name being called and conversation from another room, the physician's assessment was not as positive. The audiologist noted that "[B.A.T. used one to three word utterances to communicate and frequently mimicked the speaker. These responses are delayed for her age. . . . Speech detection thresholds support the puretone findings and indicate a mild hearing loss for speech bilaterally." (R. 228.) On June 5, 2006, Dr. Llyles noted that B.A.T. was unable to pronounce some words and his impression was that she suffered from a speech problem. (R. 238.) On October 10, 2006, B.A.T.'s mother reported to the Children's Healthy System that "child doesn't seem to hear well unless you are very close to her when talking," that her "speech is very difficult to understand and child gets frustrated when not understood," and that she "says – 10-16 words, some phrases." (R. 293.) Medical personnel recommended "speech/language evaluation and intervention." (R. 294.) On December 6, 2006, a physician at Children's Rehabilitation Service noted that B.A.T. was "still on dely with speech and language and they are about to begin speech therapy with her as soon as she is amplified." (R. 296.)

A separate order will be entered.

Done this 11th day of August, 2009.

      /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE